[ECF No. 151]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| **NEXUS PHARMACEUTICALS, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil No. 22-5683 (RMB/SAK)** |
| **NEVAKAR, INC.** et al., | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on the Motion to Strike the Expert Declaration of Dr. Robert Orr pursuant to Federal Rule of Civil Procedure 37 and Local Patent Rules 4.2 and 4.5, filed by Defendants Par Sterile Products, LLC, Par Pharmaceutical, Inc., Endo Ventures Unlimited Company, Operand Pharmaceuticals III Limited, Nevakar, Inc., and Nevakar Injectables, Inc. (collectively, "Defendants"). [ECF No. 151]. The Court considered Defendants' moving papers [ECF Nos. 151, 152], Plaintiff's opposition [ECF No. 156] and Defendants' reply [ECF No. 157]. The Court exercises its discretion to decide the motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, Defendants motions is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

On September 23, 2022, Plaintiff Nexus Pharmaceuticals, Inc., the holder of U.S. Patent No. 11,426,369 (the "'369 patent") filed this action pursuant to 25 U.S.C. § 1 *et seq.* and 28 U.S.C. § 2201 *et seq.*, alleging infringement of its '369 patent. [ECF No. 1]. On October 11, 2022, Plaintiff, also the holder of U.S. Patent No. 11,464,752 (the "'752 patent") filed a separate action

alleging infringement of its '752 patent. *See* Compl. [Docket No. 22-6030, ECF No. 1]. On December 6, 2023, both cases were consolidated with this case designated the lead case. *See* Order, December 6, 2022 [ECF No. 38]. On March 9, 2023, Plaintiff filed a First Amended Complaint alleging that Defendants infringed not only on its '369 and '752 patents, but also on U.S. Patent No. 11,571,398 (the "'398 patent"), which was issued to Plaintiff on February 7, 2023. *See* First Am. Compl. ¶¶ 1,2, 64 [ECF No. 77]. All three patents relate to ready-to-use ephedrine sulfate composition syringe product for the treatment of hypotension occurring in the setting of anesthesia. *See id.* ¶¶ 1,55, 58, 62, 66. Plaintiff further alleges that Defendants' prefilled syringe product infringes on all three patents. *See id.* ¶¶ 89–188.

In Defendants' May 3, 2023 and May 10, 2023 disclosures pursuant to Local Patent Rules 4.2(a) and (b) and 4.2(c), Defendants disclosed that they "may rely on expert declarations and/or testimony regarding how a person of ordinary skill in the art would understand and interpret" certain claim terms. Defs. Br. at 5. In Plaintiff's May 3, 2023 and May 10, 2023 disclosures, Plaintiff did not disclose that it may rely on expert opinion for claim construction. Defs. Br. at 6.

On May 15, 2023, the parties contemporaneously filed their Joint Claim Construction and Prehearing Statement ("Claim Construction Statement" or "JCCS"). [ECF No. 95]. In this statement, Defendants asserted that twelve terms require construction, while Plaintiff asserted that all claim terms are entitled to their plain and ordinary meaning. *See* JCCS [ECF No. 95]. Plaintiff further stated that it "may rely on declarations from and/or call Dr. Robert J. Orr, or others, as an expert witness to provide testimony at the claim construction hearing in rebuttal to Defendants' proposed constructions of the claim terms[.]" *Id.* at 3.

On June 29, 2023, the parties contemporaneously filed their opening *Markman* briefs. [ECF Nos. 126. 127]. Defendants' opening brief included the declaration of Dr. Barrett Rabinow, a

proposed expert intending to "provide relevant background information regarding certain disputed terms in the asserted claims . . . and to set forth [] opinions about the meaning of those terms from the perspective of a person or ordinary skills in the art. ("POSA")." *See* Rabinow Decl. [ECF No. 127-1].

Plaintiff filed its *Markman* Response Brief on September 7, 2023. The submission included the declaration of Dr. Robert Orr, the purpose of which was "to respond to Dr. Rabinow's opinions concerning [] claim terms" relating to all three patents. *See* Orr Decl. at 4-6 [ECF No. 149-5]. The claim terms were (1) "sterilized"; (2) "sealing"; (3) "sealed containers"; and (4) "a step of sterilizing the solution before the step of maintaining." *Id.*

On September 21, 2023, Defendants filed a motion to strike Paragraphs 14–22, 24–30, 33–34 and 39–40 of Dr. Orr's declaration. [ECF Nos. 151, 152]. They allege that Plaintiff decided not to provide expert declarations in its opening *Markman* brief, and now seek to do so "under the auspices of responding to Defendants' expert declaration." Defs. Br. at 1 [ECF No. 152]. They state that Dr. Orr's opinions are largely inappropriate, and objectionable in a responsive expert declaration. *Id*. They further argue that statements regarding the definition of a person of ordinary skill in the art ("POSA") and statements regarding a POSA's understanding of a claim term should have been disclosed during Plaintiff's opening *Markman* brief. *See id.* at 1. Defendants argue that Plaintiff's reliance on Dr. Orr's declaration in support of its responsive *Markman* brief is improper. *Id.* at 2. They assert that they are prejudiced because of their inability to rebut Dr. Orr's opinions in their *Markman* submission and in their expert declaration. *Id*. at 7. Defendants seek an order striking certain statements in Dr. Orr's declaration and precluding Plaintiff from relying on these statements in its responding *Markman* brief.

Plaintiff opposes Defendants' motion. Plaintiff asserts that it did not need expert testimony to support its constructions, since its opening Markman brief proposed "the plain and ordinary meaning of the claim terms [which] does not require further definition beyond the language of the claims." *See* Pl. Br. 10 [ECF No. 156]. Plaintiff also contends that Defendants' disclosures of their anticipated expert testimony "provided nothing more than a generic disclosure that Defendants may rely on an expert to testify regarding 'how a person of ordinary skill in the art would understand and interpret this claim term.'" *See id*. at 1-2. This, it argues, "did not provide Nexus with any information to allow Nexus to anticipatorily rebut that testimony." *See id*.

Plaintiff also argues that Dr. Orr's declaration "directly respond" to Dr. Rabinow's declaration. *Id.* at 1. Plaintiff further contends that its Claim Construction Statement indicated that "Nexus may rely on declarations from and/or call Dr. Robert J. Orr, or others, as an expert witness to provide testimony at the claim construction hearing in rebuttal to Defendants' proposed constructions of the claim terms[.]" *See* Pl. Br. at 2-3. Plaintiff further argues that Defendants waived their right to object to Dr. Orr's declaration in the Claim Construction Statement. *See* Pl. Br. Plaintiff states that in the Claim Construction Statement, Defendants did not object to Dr. Orr, but "reserve[d] the right to object to and/or move to strike any declarations and/or testimony provided on behalf of Nexus by any persons **other** than Dr. Robert J. Orr."[1] *Id.* at 3 (emphasis in original). Finally, Plaintiff contends that Dr. Orr's declarations are not precluded under *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894 (3d Cir. 1977). *See id*. at 14-15.

---

[1] Although Plaintiff relies on this statement for its position that Defendants waived their right to object to Dr. Orr's declaration, Plaintiff advances no legal authority in support of this position. In the absence of a full briefing on this issue, the Court interprets Defendants' statement merely to indicate their intent not to raise any procedural challenges to Dr. Orr as an expert, but certainly not as an intent to forego any substantive challenges to opinions they deem objectionable for one reason or another.

## II.    <u>DISCUSSION</u>

### A.    Legal Standard

"The Local Patent Rules 'exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases.'" *Shire LLC v. Amneal Pharms., LLC,* No. 11-3781, 2013 WL 1932927 (D.N.J. May 7, 2013) *citing Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.,* No. 12–952, 2012 WL 5818143, at *3 (D.N.J. Nov.14, 2012). These rules "ensure litigants put all their cards on the table up front." *Voxpath*, 2012 WL 5818143 at 3.

The issue before this Court arises during the claim construction phase of litigation.  Local Patent Rule 4 governs this phase. *See* L. Pat. R. 4. Pursuant to this rule, the parties are required to exchange claim terms they contend should be construed by the Court and identify any claim term which they contend should be governed by 35 U.S.C. § 112(6)." L. Pat. R. 4.1(a)-(b). Next, the parties are required to simultaneously exchange preliminary proposed claim constructions, identifying all intrinsic and extrinsic evidence supporting preliminary claim constructions. L. Pat. R. 4.2(a)-(b). "With respect to all witnesses including experts, the identifying party shall also provide a description of the substance of that witness' proposed testimony that includes a listing of any opinions to be rendered in connection with claim construction." *Id.*

The parties are then required to file a Joint Claim Construction and Prehearing Statement. L. Pat. R. 4.3(a). The statement must include, *inter alia,* the term constructions the parties agree on; proposed construction of each disputed term; the identification of intrinsic and extrinsic evidence that each party will rely on to support or oppose proposed construction; and the identity and a summary of the testimony for each expert witness whose testimony will be offered in support of claim construction. L. Pat. R. 4.3(a)-(b), (e).

The parties are then required to contemporaneously file opening *Markman* briefs. L. Pat. R. 4.5(a). The briefs are to include "any evidence supporting claim construction, including experts' certifications or declarations." *Id.* Expert discovery from those experts submitting certifications or declarations with opening *Markman* briefs concludes within 30 days of the opening *Markman* brief submissions, unless a scheduling order provides otherwise. L. Pat. R. 4.5(b). The parties are then required to "file and serve responding *Markman* briefs and any evidence supporting claim construction including any responding experts' certifications or declarations." L. Pat. R. 4.5(c).

Pursuant to Fed. R. Civ. P. 26(a), an expert witness is required to prepare a written report containing, *inter alia,* "a complete statement of all opinions that the witness will express and the basis and reasons for them." Fed.R.Civ.P. 26(a)(2)(B)(i). Pursuant to Fed. R. Civ. P. 37(c), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C).

It is well established that a court has the authority to exclude evidence if a party fails to follow the court's scheduling order. *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 791 (3d Cir.1994); *see also Shire LLC*, 2013 WL 1932927 at *3. In deciding whether to strike expert testimony, the Third Circuit has established four factors that a court should balance. *See Meyers,* 559 F.2d 894. These include: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to

comply with the court's order." *Meyers,* 559 F.2d at 904–05. Additionally, the court should consider the importance of the evidence to be excluded. *Reckitt Benkiser Inc. v. Tris Pharma, Inc.,* No. 09–3125, 2011 WL 6722707 at *6 (D.N.J. Dec.21, 2011).

### B.    Analysis

Dr. Orr's declaration contains forty paragraphs. Defendants group these paragraphs into the following three categories: (1) Statements regarding the definition of a POSA; (2) Statements directly responding to Dr. Rabinow's declaration; and (3) Statements regarding a POSA's understanding of a claim term. They seek to strike Paragraphs 14-18, which they designate as "Category 1" statements; and Paragraphs 19-22, 24-30, 33, 34, 39, and 40, which they designate as "Category 3" statements. Defendants contend that the opinions in these paragraphs should have been disclosed with Plaintiff's opening *Markman* submissions. *See* Defs. Br. at 7. They argue that the statements are inappropriate and objectionable in a responsive expert declaration. The Court will first address whether the opinions contained in "Category 1" and "Category 3" are appropriately included in a responsive declaration.  If determined to be inappropriate, the Court will then consider whether the opinions should be excluded under *Meyers*.

Plaintiff does not appear to dispute that Dr. Orr is offered as a rebuttal, as opposed to an affirmative expert witness. In its brief, it asserts that it did not need expert testimony to support its constructions, since its opening Markman brief proposed "the plain and ordinary meaning of the claim terms [which] does not require further definition beyond the language of the claims." *See* Pl. Br. 10 [ECF No. 156]. Plaintiff further contends that its Claim Construction Statement indicated that "Nexus may rely on declarations from and/or call Dr. Robert J. Orr, or others, as an expert witness to provide testimony at the claim construction hearing ***in rebuttal*** to Defendants' proposed constructions of the claim terms[.]" *See* Pl. Br. at 2-3 (emphasis added).  As a rebuttal expert, Dr.

Orr "must appropriately tailor [his] opinion within the scope of the opening claim construction expert's opinion. That is, a rebuttal expert must only respond to the opposing party's offered construction and the provided basis for that construction. Responding experts cannot oppose a construction by simply offering one of their own. Likewise, an appropriate expert disclosure for a rebuttal expert must identify an expert and set forth the basis for their responding opinion. It is insufficient for an expert disclosure of a rebuttal expert to simply adopt the construction offered by the responding party in their opening claim construction brief. Instead, the rebuttal expert must provide the scientific disagreement with the offered construction." *Shire LLC,* 2013 WL 1932927 at *9; *see also Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*, 133 F. Supp. 3d at 721, 729 (D.N.J. 2015).

Additionally, "a responsive expert declaration must be specifically addressed to the opinions expressed by the adversary's expert, and cannot simply be used as a vehicle to propose a competing construction of a disputed claim term [] nor as the means of first disclosing an opinion that the proffering party could have and should have, timely exchanged in accordance with L. PAT. R. 4.5(a)." *Otsuka*, 133 F. Supp. 3d at 729 (internal citation omitted). Here, Plaintiff failed to identify Dr. Orr as an expert who would offer affirmative opinions in support of Plaintiff's construction. Accordingly, Dr. Orr's opinions are limited to the scope of the opening claim construction expert's opinion. See *Shire LLC,* 2013 WL 1932927 at *9. The Court will now address the opinions sought to be excluded.

### 1.    "Category 1" Statements

Defendants characterizes Paragraphs 14-18 as "statements regarding the definition of a POSA" and designates them as "Category 1" statements. As discussed below, the Court finds

Paragraphs 14, 15, 17 and 18 are responsive to Dr. Rabinow's opinions, and therefore finds them permissible. The Court finds Paragraph 16 is improper in a responsive expert declaration.

### Paragraph 14 of Dr. Orr's Declaration:

A patent is read from the perspective of a person of ordinary skill in the art, or a POSA, at the time the invention was made. I have provided my opinions herein from that perspective.

Orr Decl. at ¶ 14. This paragraph is responsive to Paragraphs 1 and 9 of Dr. Rabinow's declaration. In Paragraph 1, Dr. Rabinow states, "I submit this Declaration to provide relevant background information regarding certain disputed terms in the asserted claims . . . and to set forth my opinions of those terms from the perspective of a person or ordinary skill in the art ("POSA"). Rabinow Decl. at ¶ 1. Similarly, in Paragraph 9, Dr. Rabinow states, "although my qualifications and experience may exceed those of a POSA, the testimony I offer is from a POSA's perspective." *Id.* at ¶ 9. The Court finds Dr. Orr directly and properly responds to Dr. Rabinow's statements indicating that Dr. Rabinow's opinions are from the perspective of a POSA. The Court therefore finds this paragraph is permissible in a responsive declaration. Defendants' motion is denied as to Paragraph 14.

### Paragraph 15 of Dr. Orr's Declaration:

In determining the level of skill of a POSA, I have relied on my decades of experience as a pharmaceutical formulator and expertise in formulation development. I also have been informed by counsel that the following factors can apply to determine the ordinary level of skill: (i) the education level of the inventors, (ii) type of problems encountered in the art, (iii) prior art solutions to those problems, (iv) rapidity with which innovations are made, (v) sophistication of the technology, and (vi) educational level of active workers in the field.

Orr Decl. at ¶ 15. This paragraph similarly responds to Paragraph 9 of Dr. Rabinow's Declaration. In Paragraph 9 of his declaration, Dr. Rabinow states:

In preparing this declaration, I have considered the Patents-in-Suit, their prosecution histories, the parties' proposed constructions, and the other materials

identified in Exhibit F attached to this declaration. I have also relied on my knowledge and experience in the field. Although my qualifications and experience may exceed those of a POSA, the testimony I offer is from a POSA's perspective.

Rabinow Decl. at ¶ 9. The Court finds that both Dr. Rabinow's declaration and Dr. Orr's response address their qualifications to define a POSA and/or to give testimony from the perspective of a POSA. The Court therefore finds this paragraph is permissible in a responsive declaration. Defendants' motion is denied as to Paragraph 15.

### Paragraph 16 of Dr. Orr's Declaration:

In my opinion, a POSA for the '752, '369 and '398 patent would have (i) a Ph.D. in pharmaceutical sciences, pharmacology, chemistry or a related field and 2-3 years of experience in the development of pharmaceutical products including experience in the formulation of ready-to-use liquid parenteral formulations; or (ii) a Master's degree in pharmaceutical sciences, pharmacology, chemistry or a related field and 5-6 years of experience in the development of pharmaceutical products including experience in the formulation of ready-to-use liquid parenteral formulations. The POSA would be part of a team that would include a medical doctor with clinical experience in the field of anesthesia or sedation and be familiar with the use of parenteral injections, or a person without a medical degree but extensive experience in the field of anesthesia or sedation and the use of parenteral injections including ready-to-use liquid formulations.

Orr Decl. at ¶ 16. Here, Dr. Orr purports to offer a responsive definition of a POSA, although he asserts that "Dr. Rabinow did not provide a definition for POSA." *See* Orr Decl. at ¶ 17. The Court finds this statement does not respond to Dr. Rabinow's opinion and that it constitutes a new and previously undisclosed opinion. Courts in this district have held that an expert witness cannot offer a new opinion regarding the definition of a POSA in the expert's responsive declaration *See Otsuka*, 133 F. Supp. 3d at 734. The Court finds the opinion in Paragraph 16 is improper in a responsive declaration.

### Paragraph 17 of Dr. Orr's Declaration:

Dr. Rabinow did not provide a definition for a POSA. Therefore it is not clear what qualifications Dr. Rabinow believes a POSA in the field of the claims at the relevant time would have.

Orr Decl. at ¶ 17. The Court finds this opinion is appropriately tailored to Dr. Rabinow's declaration and that it permissibly critiques Dr. Rabinow's failure a provide a definition for a POSA.[2] *See Shire LLC* 2013 WL 1932927, *9; *see also Otsuka*,133 F. Supp. 3d at 728-29. The Court therefore finds this paragraph is permissible in a responsive declaration. Defendants' motion is denied as to Paragraph 17.

### Paragraph 18 of Dr. Orr's Declaration

In Paragraph 18 of his declaration, Dr. Orr states, "[a]t the time of the invention, I was a POSA and had worked with other POSAs." Orr Decl. at ¶ 18. The Court finds this statement directly responds to Dr. Rabinow's statements regarding his qualification to render his opinions. Dr. Rabinow states that although his "qualifications and experience may exceed those of a POSA, the testimony [he] offer[s] is from a POSA's perspective." Rabinow Decl. at ¶ 9. Dr. Rabinow suggests that because his qualifications and experience exceed that of a POSA, he necessarily qualifies as a POSA, and that his opinions are offered from this perspective. The Court finds that Dr. Orr's assertion that he is a POSA is responsive and appropriately tailored to Dr. Rabinow's assertion. Similarly, Dr. Orr's assertion that he works with other POSA is also responsive to assertions made by Rabinow regarding his qualifications to opine on this matter. The Court therefore finds this paragraph is permissible in a responsive declaration. Defendants' motion is denied as to Paragraph 18.

---

[2] Plaintiff states that Dr. Rabinow's failure to provide an explicit definition for a POSA "is problematic when he defines the entirety of his testimony as being offered from the perspective of a POSA. Pl. Br. at 8. The Court agrees that this is problematic—not merely for Defendants, but also for Plaintiff. Although Dr. Orr offers a definition of a POSA, that definition is improper as it constitutes a new opinion. While the parties may consider raising this issue at the *Markman's* hearing, it is the sole decision of the district judge presiding over this hearing to allow Defendants to provide a definition for a POSA, and likewise permit Plaintiff to proceed with its proposed definition of a POSA.

## 2.    "Category 3" Statements

Defendants characterizes Paragraphs 19-22, 24-30, 33, 34, 39 and 40 as "statements regarding a POSA's understanding of a claim term." They designate these statements as "Category 3" statements. They argue that these statements "are clearly intended as affirmative support for Nexus's proposed constructions of the Claim Limitations, rather than a rebuttal to anything Dr. Rabinow said in his declaration."[3]  Plaintiff counters that "Dr. Orr does not [] present any new claim definitions, but only explains why the limitations and requirements that Dr. Rabinow seeks to read in are improper." Pl. Br. at 10. As discussed below, the Court finds Paragraphs 33 and 34(a) are responsive to Dr. Rabinow's opinions, and therefore finds them proper. The Court finds Paragraphs 16, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 34(b), 39 and 40 are improper in a responsive declaration.

### *Paragraph 19 of Dr. Orr's Declaration:*

> It is my opinion that a POSA would not understand the claim terms "sterilized," "sealing," "sealed containers," and "a step of sterilizing the solution before the step of maintaining" (Claim Terms 5, 6, 8 and 12 from the chart above) in the Patents-in-Suit to require the specific limitations incorporated by Dr. Rabinow in his declaration.

Orr Decl. at ¶ 19. Plaintiff argues that "[i]t is impossible to interpret this statement as anything other than a rebuttal to Dr. Rabinow's declaration[.]" The Court does not agree. As framed, this opinion may permissibly represent a disagreement with Dr. Rabinow's opinions regarding the

---

[3] Defendants further allege that Dr. Orr's statements are intended to support Plaintiff's arguments that (1) the "sterilized" term does not require "by applying, for purposes of achieving a sterility assurance level of the composition of $10^{-6}$ or less, a lethal agent(s) to the final container (i.e., the syringe or single-use container) containing the composition[.]" (2) the "sealing" term does not require "closing by affixing a stopper, can, and/or crimp seal[.]" (3) the "sealed containers" term does not require "closed by affixing a stopper, cap, and/or crimp seal[.]" and (4) the "a step of sterilizing the solution before the step of maintaining" term does not require "and after the step of sealing[.]" Defs. Br. at 10.

claim terms referenced in the statement. However, it could also be interpreted as a new and previously undisclosed opinion. The Court notes that this paragraph is the sole paragraph listed under the heading, "**SUMMARY OF OPINIONS**".  There is no substantiation or basis for this opinion, either within the paragraph or immediately following this paragraph.  Accordingly, even if Dr. Orr intended Paragraph 19 as a rebuttal to Dr. Rabinow's declarations, he failed to set forth any basis for this opinion. *Shire* instructs than an appropriate rebuttal expert must set forth the basis for the responding opinion. *See Shire LLC*, 2013 WL 1932917, at *9. The Court therefore finds the opinion in Paragraph 19 is improper in a responsive declaration.

### *Paragraph 20 of Dr. Orr's Declaration:*

> I agree with Dr. Rabinow's statement that "[a]s of the priority date, a POSA would have understood that there were numerous methods of sealing syringes or containers, in addition to using a stopper, a cap, or a crimp seal. For instance, a POSA would recognize additional methods such as, but [not] limited to, fusion (e.g., sealing via melting plastic or glass), plunger (e.g., a plunger on a syringe), screw-on lids, and tape or films." Rabinow Decl., ¶ 31.

Orr Decl. at ¶ 20. This opinion does not rebut Dr. Rabinow's opinion.  Rather, Dr. Orr offers an opinion that is new and was not previously disclosed in an opening expert report.  As discussed above, the Court finds the Opinion is Paragraph 20 is improper in a responsive declaration.

### *Paragraphs 21 & 22 of Dr. Orr's Declaration:*

> 21. I do not agree with Dr. Rabinow, however, that anything in the Patents-in-Suit would lead a POSA to understand that the terms "sealing" and "sealed" as used in the patent are limited to the specific methods of "affixing a stopper, cap, or crimp seal."

> 22. I have reviewed the specification and, it is my opinion, that a POSA would understand the terms "sealing" and "sealed" to encompass various methods of sealing containers such as vials and syringes, including each of the methods identified by Dr. Rabinow in paragraph 31 of his declaration. As one example, the specifications of the Patents-in-Suit disclose that the invention concerns both vials and syringes. *See e.g.*, '752 patent col. 11, l. 67- col 12, l. 8. A POSA would understand that, as acknowledged by Dr. Rabinow, one method to seal a syringe is to use a plunger. A POSA would understand that a plunger would be

one of the methods of "sealing" used in the Patents-in-Suit. Thus, Dr. Rabinow's definition, which does not encompass a plunger as a type of seal, is too narrow.

Orr Decl. at ¶¶ 21, 22. In Paragraph 21, Dr. Orr expresses his disagreement with Dr. Rabinow's construction for the claim terms addressed in the statement.  While this is appropriate in a rebuttal declaration, the rebuttal expert is also required to "set forth the basis for [his] responding opinion. *See Shire LLC*, 2013 WL 1932917, at *9. Dr. Orr fails to provide any basis for his opinion. This opinion is therefore improper. In Paragraph 22, Dr. Orr appears to support his preceding statement with the assertion that Dr. Rabinow's construction for "sealing" and "sealed" is "too narrow" as it does not include a plunger as one method of "sealing." This opinion is improper as Dr. Orr attempts to use his rebuttal to expand Dr. Rabinow's definition of "sealing" and "sealed".  In other words, he attempts to use his rebuttal as a vehicle to propose a competing construction. *Shire* cautions that a responding expert cannot oppose a construction by simply offering a competing construction. *Shire LLC*, 2013 WL 1932917, at *7-8. As discussed above, the Court finds the opinions in Paragraphs 21 and 22 are improper in a responsive declaration.

### *Paragraphs 24 & 25 of Dr. Orr's Declaration:*

24. It is my opinion that a POSA would understand the words *sterilization* and *terminal sterilization* to have a different scope. It is also my opinion that a POSA would not understand either term to be limited to the specific definition proposed by Dr. Rabinow for both terms: "[sterilized by] applying, for purposes of achieving a sterility assurance level of the composition of 10-6 or less, a lethal agent(s) to the final container (i.e., the syringe or single- use container) containing the composition.

25. It is my opinion that a POSA would understand that "sterilized" or "sterilization" is broader than "terminal sterilization." A POSA would recognize that sterilization encompasses a variety of methods for removing microbial contaminants, while terminal sterilization is a subset encompassing particular methods of removing microbial contaminants. For example, I agree with Dr. Rabinow's statement that a POSA would recognize that aseptic preparation, including sterilization of the fluid by methods such as filtration, is a "common method[] of achieving sterility." Rabinow Decl., ¶23. Based on my

> review of the Patents-in-Suit, it is my opinion that a POSA would understand that the words "sterilized" and "sterilizing" as used in the Patents-in-Suit encompass all methods of removing microbial contaminants known to a POSA.

Orr Decl. at ¶¶ 24, 25. As with Paragraphs 21 and 22, Dr. Orr's rebuttal opinions in Paragraphs 24 and 25 attempt to expand the definition of "sterilized" and "sterilizing" to "encompass all methods of removing microbial contaminants known to a POSA." He again attempts to use his rebuttal as a vehicle to propose a competing construction. For the reasons stated in the discussion on Paragraphs 21 and 22, the Court finds the opinions in Paragraphs 24 and 25 are improper in a responsive declaration.

### Paragraph 26 of Dr. Orr's Declaration:

> The Patents-in-Suit each state that "[t]he ephedrine or ephedrine salt solution must be sterilized before use by a clinician." '752 patent, col. 16, ll. 19-20. It does not require that any particular method of sterilization must be used. The specification then discloses a variety of embodiments in which the solution is sterilized, as discussed more fully below.

Orr Decl. at ¶ 26. Plaintiff asserts that this opinion is responsive primarily to Paragraphs 24, 42, and 43 of Dr. Rabinow's declaration. Pl. Br., Exh. 1 [ECF 156-2]. Paragraph 24 of Dr. Rabinow's declaration describes the process of "terminal sterilization" as one by which a lethal agent such as heat or radiation is applied. Rabinow Decl. at ¶ 24. In this paragraph, Dr. Rabinow also provides the FDA's definition of "terminal sterilization", which he purports to be consistent with his construction of the term. *Id.* In Paragraph 42, Dr Rabinow opines that "[a] POSA reading the claims would have known that they require at least some degree of sterility." Rabinow Decl. at ¶ 42. Paragraph 43 offers a POSA's understanding of the term "sterilized" to mean "sterilized by applying, for purposes of achieving a sterility assurance level of the composition of $10^{-6}$ or less, a lethal agent(s) to the final container[.]" Rabinow Decl. at ¶ 43.

Here, Dr. Orr's response exceeds the scope of Dr. Rabinow's opinion. While Dr. Rabinow discusses a specific sterilization process, Dr. Orr attempts to expand the scope of this opinion by opining that no particular method of sterilization must be used. As in Paragraph 22, Dr. Orr again attempts to use his rebuttal as a vehicle to propose a competing construction. For the reasons stated in the discussion on Paragraph 22, the Court finds the opinion in Paragraph 26 is improper as responsive declaration.

### Paragraphs 27 & 28 of Dr. Orr's Declaration:

27. A POSA reviewing the Patents-in-Suit would understand based on the use of the terms sterilization and terminal sterilization, that the inventors considered the terms sterilization and terminal sterilization to be distinct. Claim 1 of the '752 patent uses the word "sterilized", whereas claim 2 of the '752 patent uses "terminally sterilizing". A POSA reading these claims would understand that when the inventors use the word "sterilized", it has a broader meaning than the term "terminally sterilizing," including in light of the POSA's knowledge that there are types of sterilization other than terminal sterilization.

28. A POSA would also understand that there were, at the time of the invention, types of sterilization that do not require applying a lethal agent to the final container. As discussed above, aseptic preparation for example, is a common method of sterilization. Aseptic preparation does not require separately applying a lethal agent to the final container but is intended to achieve sterility. *See* Rabinow Decl., ¶¶23-24.

Orr Decl. at ¶¶ 27, 28. In Paragraphs 27 and 28, Dr. Orr attempts to refute Dr. Rabinow's opinions with competing constructions for the terms, sterilization and terminal sterilization. As discussed above, the Court finds the opinions in Paragraphs 27 and 28 are improper in a responsive declaration.

### Paragraph 29 of Dr. Orr's Declaration:

A POSA reading the specification of the Patents-in-Suit would understand not only that there are types of sterilization that don't require applying a lethal dose to the final container, but that these types of sterilization were included in the inventions claimed by the Patents-in-Suit.  . . .[and] a POSA would understand that the sterilization discussed in the specification encompasses any suitable method known in the art.

16

Orr at ¶ 29. Plaintiff asserts that this paragraph responds primarily to Paragraphs 26 and 42 of Dr. Rabinow's Declaration. [ECF No. 156-2]. In Paragraph 26, Dr. Rabinow opines that a POSA would have known that "terminal sterilization" is superior to "aseptic processing".[4] In Paragraph 42, Dr Rabinow opines that "[a] POSA reading the claims would have known that they require at least some degree of sterility." Rabinow Decl. at ¶ 42. Here, as in Paragraph 27 and 28, Dr. Orr again attempts to refute Dr. Rabinow's opinion with a competing construction for the term sterilization. As discussed above, the Court finds the opinion in Paragraph 29 is improper in a responsive declaration.

### Paragraph 30 of Dr. Orr's Declaration:

A POSA reading these statements in the specification would understand that the specification discloses both sterilization methods in which the solution is placed in a container prior to sterilizing and other embodiments that do not require placing the solution in a container before sterilizing. A POSA would be familiar with these methods of sterilization and would understand the specification's references to sterilization to encompass all such methods.

Orr Decl. at ¶ 30. In Paragraph 30, Dr. Orr again attempts to refute Dr. Rabinow's opinion with a competing construction for the term sterilization. As discussed above, the Court finds the opinion in Paragraph 30 is improper in a responsive declaration.

### Paragraphs 33 and 34 of Dr. Orr's Declaration:

33. Similarly, a POSA would not understand that sterilization as used in the Patents-in-Suit necessarily requires an SAL of $10^{-6}$. Example 1, discussed in columns 16 and 17 of the '752 patent, reports that "visual inspection" "revealed no extraneous matter" and that the sterilized vials passed sterility testing consistent with USP method <71> and passed bacterial endotoxins testing by USP method <87>." '752 patent col. 17, ll. 34-39.

---

[4] Dr. Rabinow previously opined that a POSA "would have recognized that there are two common methods pf achieving sterility: aseptic processing and terminal sterilization." *See* Rabinow Decl. at ¶ 23.

34. A POSA would not understand that methods of sterilization other than terminal sterilization, such as aseptic processing and filtration, require an SAL of 10-6. This is confirmed by the European Pharmacopeia and the FDA guidelines, which fail to indicate any such requirement for aseptic processing and filtration. Exhibit F to Nexus's Br. at 575-576, Exhibit E to Nexus's Br. at 27. A POSA would further understand from the FDA guidelines that, even for "terminal sterilization," there are circumstances where terminal sterilization may not achieve an SAL of 10-6. Exhibit E to Nexus's Br. at 59, Rabinow Declaration at ¶39 ("terminal sterilization" "*usually*" achieves and SAL of "less than 10-6") (emphasis added).

Orr at ¶ 33, 34. Plaintiff asserts that these opinions respond primarily to Paragraphs 38, 39, 41 and 43 of Dr. Rabinow's declaration. In Paragraph 38 of Dr. Rabinow's declaration, Dr. Rabinow opines that a POSA would have consulted the FDA Guidance and the European Phamacopoeia on a variety of laboratory issues, including methods of preparing sterile products. In Paragraph 39, Dr. Rabinow opines that a POSA would have understood that the FDA Guidance's definition of "[t]erminal sterilization" reflected the definition of "terminal Sterilization in the art. Dr. Rabinow asserted that this definition involved "[t]he application of a lethal agent to sealed, finished drug products for the purpose of achieving a predetermined sterility assurance level ("SAL") of usually less than $10^{-6}$. In Paragraph 41, Dr. Rabinow similarly opined that the European Phamacopoeia guidelines would also have taught a POSA that, when performing terminal sterilization using steam sterilization, the method should be designed so "as to give an SAL of $10^{-6}$ or better." In Paragraph 43, Dr. Rabinow offers a POSA's understanding of the term "sterilized" to mean "sterilized by applying, for purposes of achieving a sterility assurance level of the composition of $10^{-6}$ or less, a lethal agent(s) to the final container[.]" Rabinow Decl. at ¶ 43.

Here, in Paragraph 33, Dr. Orr expresses disagreement with Dr. Rabinow's opinion that "sterilization as used in the Patents-in-Suit necessarily requires an SAL of $10^{-6}$." He cites to information contained in the '752 patent as the basis of his disagreement. The Court finds that Dr.

Orr appropriately rebutted Dr. Rabinow's opinion and provided a scientific basis for his disagreement. *See Shire LLC,* 2013 WL 1932927 at *9. The Court therefore finds this opinion permissible in a responsive declaration. Defendants' motion is denied as to Paragraph 33.

The Court notes that Paragraph 34 contains two opinions. The first opinion states "[a] POSA would not understand that methods of sterilization other than terminal sterilization, such as aseptic processing and filtration, require an SAL of $10^{-6}$. . . ." The second opinion states [a] POSA would further understand from the FDA guidelines that, even for "terminal sterilization," there are circumstances where terminal sterilization may not achieve an SAL of $10^{-6}$. . . ."[5] In the first opinion, Dr. Orr expresses disagreement with Dr. Rabinow's opinion that "methods of sterilization other than terminal sterilization, require an SAL of $10^{-6}$. Here, Dr. Orr also provides a basis for this disagreement—the European Pharmacopeia and the FDA guidelines. For the reasons stated in the discussion on Paragraph 33, the Court finds the first opinion in Paragraph 34 is permissible in a responsive declaration. Defendants' motion is denied as to Paragraph 34(a).

As to the second opinion in Paragraph 34, Dr. Orr attempts to assert a competing construction by opining on what a POSA "would further understand." As discussed above, the Court finds the Opinion in Paragraph 34(b) is improper in a responsive declaration.

### Paragraph 39 of Dr. Orr's Declaration:

> As discussed above in paragraphs 23-37, A POSA would also understand that there were types of sterilization that do not require applying a lethal agent to the final container. For example, aseptic preparation and filtration do not require applying a lethal agent to the final container. Rabinow Decl. at ¶23, Exhibit F to Nexus's Br. at 575-576. A POSA reading the specification of the '369 patent would understand not only that there are types of sterilization that don't require applying a lethal dose to the final container, but that these types of sterilization were included in the invention claimed by the '369 patent . . . .

---

[5] For ease of reference, the Court refers to the first opinion in Paragraph 34 as 34(a). The second opinion in this paragraph is referred to as 34(b).

Orr Decl. at ¶ 39. In Paragraph 39, Dr. Orr again attempts to refute Dr. Rabinow's opinion with a competing construction for the term sterilization. As discussed above, the opinion in Paragraph 39 is improper in a responsive declaration.

### Paragraph 40 of Dr. Orr's Declaration:

> There is nothing in the claims of the '369 patent or the specification that requires sterilization to occur before sealing. For example, in aseptic processing and filtration, sterilization occurs before the final container is sealed. The Patents-in-Suit further envision sterilization that occurs before the final container is sealed. '369 patent, col. 16, ll. 34-38, 48-50.

Orr Decl. at ¶ 40. Plaintiff asserts that this paragraph relates to Paragraph 46 of Dr. Rabinow's Declaration, which states: "Example 1 of the '369 patent recites that "[t]he capped vials were crimped [i.e., sealed] and sterilized by the overkill approach." '369 patent at 18:12–14. A POSA would have understood that to mean that the crimping (sealing) is done before sterilizing." Rabinow Decl. at ¶ 46. Here, Dr. Orr's response is not appropriately tailored to the scope of Dr. Rabinow's opinion. Dr. Rabinow cites to Example 1 of '369 to support his view that a POSA would have understood the information presented in Example 1 to mean that crimping (sealing) is done before sterilizing. Dr. Orr's response does not address "Example 1", but rather broadly assert a new opinion that "nothing in the claims of the '369 patent or the specification [] requires sterilization to occur before sealing." The Court finds that Dr. Orr improperly attempts to refute Dr. Rabinow's opinion with a competing construction. The opinion in Paragraph is 40 is improper in a responsive declaration.

Having found the opinions in Paragraphs 16, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 34(b), 39 and 40 to be improper, the Court now decides whether they should be stricken. In deciding whether to strike expert testimony, the Court should consider: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the

ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order." *Meyers,* 559 F.2d at 904–05. The Court should also consider the importance of the evidence to be excluded. *Reckitt Benkiser Inc*, 2011 WL 6722707 at *6.

As to the first factor—prejudice or surprise against Defendants, Defendants contend that they have been prejudiced because they were unable to rebut Dr. Orr's opinions and because they were deprived of the opportunity to take the expert discovery. *See* Defs. Br. at 13.  Plaintiff argues that there was no surprise to Defendants, since Plaintiff informed Defendants in the Claim Construction Statement, that they intended to rely on a rebuttal declaration from Dr. Orr. *See* Pl. Br. at 15. Plaintiff notes that Defendants did not object to rebuttal testimony from Dr. Orr. *Id.* Plaintiff further contends that any surprise by Defendants was caused by Defendants' failure to identify the substance of their expert testimony in the patent rule disclosures, choosing instead to use generic boilerplate language. *Id.* at 15, 18." *Id*. at 18. Plaintiff contends that this failure prevented Plaintiff from predicting what Dr. Orr may have said in rebuttal. *Id*. at 18.

The Court observes that although a trial date has not yet been scheduled, the parties have already filed their Claim Construction Statement, and the *Markman* hearing is scheduled for February 22, 2024 [ECF No. 189]. The Court is also mindful that "[a] purpose of the Local Patent Rules is to assure that the case is well-prepared for a claim construction hearing at the earliest practicable date, usually within twelve months of the filing of the complaint, following a rigorous period of mandatory disclosures regarding the claims, contentions, defenses, and supporting documents." *Otsuka*, 133 F. Supp. 3d at 728; *see also* L. Pat. R. 3.1–3.8. In light of these consideration, particularly the advanced stage of litigation, the Court agrees with Defendants that

they will be unduly prejudiced if the improper opinions were not excluded. This factor weighs in favor of excluding the evidence.

As to the ability to cure the prejudice, Defendants assert that any attempt to cure the prejudice would only serve to delay the case. *See* Defs. Br. at 13. They contend that if they were permitted to submit a reply declaration from Dr. Rabinow, submit a sur-reply brief and depose Dr. Orr, these additional events would delay the case, resulting in prejudice to them. *Id.* Plaintiff counters that it offered Dr. Orr for deposition on three occasions *See* Pl. Br. at 16. Ultimately, Plaintiff contends, Defendants declined the offer stating that the deposition was moot in light of the instant motion being filed. *Id.* Plaintiff states that at the time Dr. Orr's deposition was offered, a claim construction hearing had not yet been scheduled. *Id*. Defendants counter that they sought both the deposition of Dr. Orr and Plaintiff's consent for the submission of a reply declaration of Dr. Orr's deposition. *See* Defs. Reply Br. at 7. They state that although Plaintiff agreed to Dr. Orr's deposition, it did not consent to a reply declaration. *Id.* Both parties appear to have engaged in meet and confers in an attempt to cure the prejudice, but efforts were ultimately unsuccessful. *See* Defs. Reply Br. at 7-8; Pl. Br. at 16-17. Here, the Court finds that attempts to cure the prejudice will significantly delay litigation. This factor weighs in favor of excluding the evidence.

As to the bad faith or willfulness in failing to comply with the court's order, the Court was presented with no evidence of bad faith by Plaintiff in complying with the court orders. This factor is neutral.

As to the importance of the evidence to be excluded, the Court finds that Plaintiff will not be unduly prejudiced by the exclusion of evidence as the merits of claim construction hearings turn largely on intrinsic evidence. *See Shire LLC*, 2013 WL 1932927 at *4 (while "[e]xtrinsic

evidence can be useful to the Court regarding claim construction, [it] is generally less reliable than intrinsic evidence in determining claim construction[.]") This factor is also neutral.

The Court finds the balancing of the *Meyers* and *Reckitt* factors weigh in favor of exclusion.

### III.    <u>CONCLUSION</u>

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **17th** day of **January 2024**, that Defendants' motion to strike the expert declaration of Dr. Robert Orr is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** as to Paragraphs 16, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 34(b), 39 and 40.  It is **DENIED** as to Paragraphs 14, 15, 17, 18, 33, and 34(a); and it is further

**ORDERED** that Plaintiff shall not rely on the following opinions by Dr. Orr to rebut Defendants' offered constructions: Opinions in Paragraphs 16, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 34(b), 39 and 40 of Dr. Orr's declaration.

<u>s/ Sharon A. King</u>
SHARON A. KING
United States Magistrate Judge

cc:  Hon. Renée Marie Bumb, Chief Judge